IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| AMANDA M. WEIR,<br><br>      **Plaintiff,**<br><br>vs.<br><br>CRAWFORD & COMPANY,<br><br>      **Defendant.** | CIVIL ACTION<br>FILE NO.: _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Amanda M. Weir (hereinafter "Ms. Weir" or "Plaintiff") files this Complaint against the Defendant Crawford & Company (hereinafter "Crawford" or "Defendant") showing the Court that Defendant discriminated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended by the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 1981A ("Title VII") as follows:

## INTRODUCTION

1. After successfully starting, growing, and selling her own environmental business, Crawford hired Plaintiff to build its Environmental Consulting Practice Division from the ground up in March 2022, for a salary of $180,000 annually plus bonuses and other benefits. Thereafter, Plaintiff was

lauded for setting up a good business plan for the new Environmental Practice Division.  Yet, once Plaintiff informed Crawford of her pregnancy in April 2022, her direct supervisor Robert Cunningham subjected her to odd and provably false criticism about her job performance.  Plaintiff had not been subject to this criticism before announcing her pregnancy and need for maternity leave, nor was a male co-worker in a similar position (hereinafter "the comparator") subjected to any such criticism. On June 7th, less than 75 days after her initial hire, Robert Cunningham unilaterally canceled Plaintiff's attendance at an industry conference, claiming that poor performance caused the cancellation.  However, the comparator with equal job performance and equal revenue production was permitted to attend the conference.  Shortly after June 7, Plaintiff contacted the EEOC, and filed a complaint with HR regarding pregnancy discrimination.  Crawford then terminated Plaintiff's employment on June 17, 2022 for pretextual reasons.

## PARTIES

2. At all times relevant to this action, Ms. Weir was an employee of Crawford.

3. At all times relevant to this action, Crawford was a Georgia corporation operating its principal place of business at 5335 Triangle Parkway,

Peachtree Corners, Georgia 30092, subject to personal jurisdiction in Georgia, and was Ms. Weir's employer within the meaning of Title VII.

**JURISDICTION, VENUE, AND ADMINISTRATIVE EXHAUSTION**

4. This Court's jurisdiction is proper pursuant to 28 U.S.C. § 1331 as the claims herein present a federal question.

5. Venue is proper in this district and division under 28 U.S.C. § 1391 because Defendant resides in and conducts business in this district and division, and the unlawful actions and practices alleged herein were committed within the Northern District of Georgia.

6. Crawford may be served with a summons and copy of the Complaint by delivering it to its registered agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

7. Ms. Weir has complied with all conditions precedent to the filing of this action, including filing a timely Charge of Discrimination with the Equal Employment Opportunity Commission (Charge No. 410-2022-06859). This action has been filed within ninety (90) days of her receipt of a Notice of Right to Sue.

**FACTS**

8. Ms. Weir graduated from LSU in 2005 with a bachelor's degree in biological sciences, two weeks prior to Hurricane Katrina. Shortly after

Katrina, she started working with RGA Environmental providing environmental assessment services for damaged buildings and construction oversight during remediation.

9. Three years later, RGA closed their New Orleans office. At that time, Ms. Weir opened her own company, Weir Environmental in 2008. Weir Environmental was a full-service environmental consulting firm which grew to have three offices: New Orleans, Denver, and New York.

10. In 2011, Ms. Weir developed a strategic plan to grow her company in the insurance claims industry. This plan was successful, and her company grew exponentially from 2011 to 2016 due to this focus and expansion into large loss claims providing industrial hygiene services for losses ranging from several hundred thousand dollars to over one million dollars.

11. In 2016 Weir Environmental was sold to NV5, a publicly traded engineering firm.

12. As part of selling her business, Ms. Weir signed a four year non-compete agreement, and did not work in the industry from 2017 to 2020.

13. During the time off, Ms. Weir attended Adler University in Vancouver, British Columbia and completed a master's degree in Industrial and Organizational Psychology, a specialized degree program in applied business psychology.

14. In late 2021 and early 2022, with her noncompete having expired, she began a job search and was highly sought after. Those seeking her services included Crawford, who sought her services to start a new Environmental Practice Division from the ground up. In January 2022, Crawford presented Ms. Weir with a written and published job description for a newly designed environmental practice director position. Part of the published job description included hiring staff and preparing and executing a business plan. The published job description did not include any reference to billable work requirements on behalf of Ms. Weir.

15. Ms. Weir accepted the position with Crawford and began working for the company on March 28, 2022.

16. Ms. Weir's offer letter stated that she reported to Paul Kottler, who was based in Atlanta, Georgia.

17. Crawford tasked Ms. Weir with building the new division from the ground up: formulating a business plan, hiring subordinates to work in the department, developing website content, introducing the role within the company, introducing the role to clients, finalizing vendor contract review.

18. Ms. Weir prepared a business plan for her new environmental practice division, which included hiring staff and did not discuss a billable requirement.

19. Ms. Weir presented her business plan and received no push-back. Paul Kottler approved Ms. Weir's requested hires and overall business plan during a May 6, 2022 meeting.

20. Ms. Weir learned that she was pregnant. Ms. Weir informed Robert Cunningham of her pregnancy in April 2022.

21. After announcing her pregnancy, Robert Cunningham and Jenna Gibbs began to cancel their weekly calls with Ms. Weir.

22. Further, after learning of her pregnancy Robert Cunningham suddenly described new and unusual requirements for Ms. Weir's position that were not a part of her published job description or the approved business plan.

23. For example, during an April 21, 2022 meeting Robert Cunningham stated that Ms. Weir "had no value" if she did not perform billable work.

24. Performing billable work was not a key component or focus of Ms. Weir's published job description or described to her in any of her interviews, business plan(s) or otherwise disclosed to her before she announced her pregnancy.

25. The April 21, 2022 meeting was the first reference to lack of value or a demand for billable work. It was unclear, however, how Ms. Weir was supposed to perform any billable work when there were not yet any support

6

employees or other necessary infrastructure within this new division that Ms. Weir had been hired to set up less than thirty (30) days prior.

26. On June 2, 2022, shortly after Ms. Weir had sent an email describing, in part, her future need for maternity leave and needing to hire a person in her department (as approved by Paul Kottler) to cover for her during her maternity leave, Robert Cunningham inexplicably stated on a call that he would not approve the hire that Paul Kottler previously approved.

27. During this call, Robert Cunningham said that he would not approve the hire request because of Ms. Weir's lack of performance. This was the first complaint that Ms. Weir received regarding her performance, though she was given no specifics about her "lack of performance" or how she was not performing.

28. Ms. Weir had been employed at this point for little more than 60 days, and during that time was executing on exactly what was told would be expected of her when she interviewed and was hired.  To the extent her performance was hindered, it was only hindered by Robert Cunningham's refusal to authorize the hiring of the necessary (and previously authorized) support personnel.

29. On June 7, 2022 Robert Cunningham and Jenna Gibbs informed Ms. Weir that they had canceled Ms. Weir's ability to attend a June 8, 2022 industry

conference, claiming again that this was necessary due to vague and unspecified "performance" problems.

30. However, the male comparator with equal job performance and equal revenue production was permitted to attend the conference.

31. On June 8, 2022 Ms. Weir contacted the EEOC regarding her pregnancy discrimination concerns.

32. The EEOC sent Ms. Weir an email instructing her to keep copies of electronic evidence.

33. In response, Ms. Weir forwarded some of emails from her Crawford account to her personal account. These few emails to herself did not contain any confidential information or other items that Ms. Weir was not already privy to and/or had not already drafted herself.

34. On June 10, 2022 Ms. Weir contacted Crawford human resources, which is based in Atlanta, Georgia regarding a complaint of pregnancy discrimination.

35. On June 13, 2022, Ms. Weir had an in-depth call with Crawford human resources about her complaint of pregnancy discrimination. Ms. Weir explained that she was pregnant, that she may have been excluded from a conference because of her pregnancy, and that Robert Cunningham declined to

hire someone to take some responsibilities during her impending maternity leave.

36. On June 17, 2022 Crawford (and specifically Robert Cunningham) terminated Ms. Weir's employment for the purported reason of her sending emails (to herself) outside of Crawford's system.

37. But Crawford never trained, informed or provided Ms. Weir with any policy that would prohibit her from sending emails to herself, in compliance with the EEOC's request.

38. Crawford did not conduct a complete and thorough investigation into Ms. Weir's alleged email policy violation. Ms. Weir was not interviewed about this, nor given an opportunity to explain that no confidential information was forwarded and that she was simply attempting to comply with an EEOC directive.

39. Upon information and belief, other similarly situated Crawford employees forward emails to their personal accounts but do not face immediate termination or even any discipline.

## COUNT I:
## TERMINATION OF PLAINTIFF'S EMPLOYMENT BASED ON PREGNANCY IN VIOLATION OF TITLE VII

40. Plaintiff incorporates herein by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

41. As a pregnant female, Ms. Weir is a member of a class protected under Title VII, as amended by the Pregnancy Discrimination Act of 1978.

42. Crawford unlawfully discriminated against Ms. Weir on the basis of her sex, which includes pregnancy, by terminating her employment because of Ms. Weir's pregnancy and intended pregnancy-related leave.

43. At all relevant times to this action, Defendant acted intentionally, willfully, and in bad faith towards Ms. Weir and with malice and reckless indifference to Ms. Weir's federally protected rights.

44. As a result of Defendant's pregnancy discrimination described herein, Ms. Weir has suffered actual and compensatory damages, including but not limited to lost wages, back pay, front pay in lieu of reinstatement, attorneys' fees, and punitive damages.

## COUNT II:
## RETALIATION IN VIOLATION OF THE PDA

45. Plaintiff incorporates herein by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

46. Ms. Weir engaged in a protected activity when she notified Defendant of her pregnancy, notified Defendant of her intent to utilize maternity leave, contacted the EEOC regarding her pregnancy discrimination, and contacted Crawford regarding her pregnancy discrimination.

47. Plaintiff subsequently experienced temporally proximate adverse employment actions.

48. Defendant terminated Plaintiff's employment because Plaintiff engaged in statutorily protected activity. This conduct is prohibited by Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978.

49. Defendant knew that federal law prohibits retaliation, and willfully and/or recklessly disregarded Plaintiff's federally protected rights in its retaliatory termination of Plaintiff.

50. Due to Defendant's unlawful actions, Plaintiff was injured and is therefore entitled to punitive and compensatory damages, back pay, prejudgment interest, reinstatement or front pay, attorneys' fees, costs, and further relief in an amount to be determined at trial.

## **PRAYERS FOR RELIEF**

WHEREFORE, Ms. Weir respectfully prays that this Court grant the following relief:

1) Issue judgment in favor of Plaintiff that Defendant discriminated against Ms. Weir on the basis of her pregnancy in violation of Title VII and the Pregnancy Discrimination Act;

2) Issue judgment in favor of Plaintiff that Defendant retaliated against Ms. Weir on the basis of her pregnancy in violation of Title VII and the Pregnancy Discrimination Act;

3) That Plaintiff have and recover from Defendant back pay and benefits, with prejudgment interest thereon;

4) That the Court award front pay and benefits in an amount sufficient to compensate her for the loss of future salary and fringe benefits;

5) That Plaintiff have and recover compensatory damages in an amount to be determined by a jury;

6) That Plaintiff have and recover punitive damages in an amount to be determined by a jury;

7) That Plaintiff have and recover her attorneys' fees, litigation expenses, and costs of litigation; and

8) Any and other such further relief that this Court or the Finder of Fact deems equitable and just.

**Plaintiff demands a trial by jury.**

Respectfully submitted this 5th day of December, 2022.

/s/ Douglas Kertscher
Douglas R. Kertscher
Georgia Bar No. 416265

                                      Julie H. Burke
                                      Georgia Bar No. 448095

Hill, Kertscher & Wharton, LLP
3625 Cumberland Blvd.
Suite 1050
Atlanta, GA 30339
770-953-0995 (ph.)
770-953-1358 (fax)
drk@hkw-law.com
jb@hkw-law.com